IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                  Case No.  16-CR-3065-JB

HERMAN LEYVOUNE WILSON, JR.,

      Defendant.

### DEFENDANT HERMAN LEYVOUNE WILSON, JR.'S SENTENCING MEMORANDUM

COMES NOW Defendant HERMAN LEYVOUNE WILSON, JR., by and through his undersigned appointed counsel, Charles Fisher, and files this Sentencing Memorandum in anticipation of the Sentencing Hearing set for January 26, 2017.

### A.  INTRODUCTION

Since his release from his last sentence of imprisonment in 2008, Herman Wilson has made every effort to demonstrate that he has changed from an unruly 20 year old to become a responsible citizen and family man. He has sought to educate himself. He has established a steady work history, including working in positions where, as a cashier, he was entrusted with his employers' money. He has found and consistently adhered to the tenets of a religious faith that not only brings him personal solace, but also provides him with a moral code that he has assiduously followed to the very best of his ability. He has become a father to two children, for whom he strives to serve as a role model. Finally, although his marriage to his wife Ashley underwent some rocky times, resulting in a divorce, he and Ashley have reunited and once more made a home together and with the children of that union, and intend to remarry.

The offense for which he is now to be sentenced represents an aberration from the

consistent progress that Mr. Wilson has made over the last 8 years.

Mr. Wilson would respectfully urge the Court to consider that, without in any way minimizing the seriousness of the offense to which he has pleaded guilty, and in the particular circumstances of this case, imprisonment for the term contemplated by the advisory guideline range would be "greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a).

### B.  FACTUAL BACKGROUND TO THE OFFENSE

Mr. Wilson has acknowledged that he knew that, as a felon, he was not permitted to have a firearm in his possession. He acquired the firearm for the protection of himself and his family. He never fired the firearm. He may have suspected, but he did not know, that the firearm was stolen.

Mr. Wilson has also acknowledged how foolish he was to acquire the firearm, which resulted in the loss of his liberty, his separation from his family, his jobs, his ongoing education classes, and ended the progress in every aspect of his life that he had been making since his release from prison in 2008 up to the time of his arrest. As the author of his own misfortune, he now faces another term of imprisonment.

From the outset of his first encounter with the FBI agents on June 24, 2016, Mr. Wilson was fully cooperative, initially by consenting to a search of his vehicle and then consenting to a search of his home. In advance of that search, Mr. Wilson informed the agents as to where they would find the firearm, the magazine, and ammunition that is the subject of this offense. After the agents had recovered the firearm, magazine, and some ammunition, Mr. Wilson told the agents where they would find the remaining ammunition.

Immediately following his arrest, Mr. Wilson consented to a lengthy interview with the FBI agents, during the course of which he was equally candid about both the offense and also his background. He expressed his profound regret for the offense. He also explained, as he does in his letter to the Court, that he never even fired the weapon throughout the time he had the firearm in his possession. *See* Exhibit 1, Letter of Defendant Herman Leyvoune Wilson, Jr., attached hereto and incorporated herein by reference.

Moreover, in his very first appearance while represented by undersigned counsel, Mr. Wilson voluntarily admitted to the offense before Chief United States Magistrate Judge Karen B. Molzen.

### C.  LEGAL FOUNDATION FOR SENTENCING

It is accepted that the Court must begin its analysis by correctly calculating the applicable advisory guideline range pursuant to 18 U.S.C. §3553(a)(4) & (a)(5). However, following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) and its progeny, the advisory guideline range is just one of several factors the Court must consider to arrive at a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a).

The Court must then consider all of the §3553(a) factors to determine whether they support the advisory guideline sentence. *Gall v. United States,* 552 U.S. 38, 50 (2007). The Court must make an individualized assessment based on all of the facts to determine whether a departure or a variance is warranted. *Id.* After this inquiry, the Court may impose any sentence that is "reasonable" and may depart or vary from the Guidelines for any fair and just reason. *United States v. Smart,* 518 F.3d 800, 804 (10th Cir. 2008).

To be substantively reasonable, the sentence should reflect not only the nature and circumstances of the offense but also the §3553(a) factors as applied to the case, including the

3

history and characteristics of the defendant. *United States v. Verdin-Garcia,* 516 F.3d 884, 895 (10th Cir. 2008); see also *United States v. Angel-Guzman,* 506 F.3d 1007, 1014-15 (10th Cir. 2007)(same).

The Court is also required by 18 U.S.C. §3553(a) to consider what sentence will: "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense", 18 U.S.C. §3553(a)(2)(A); "afford adequate deterrence to criminal conduct", 18 U.S.C. §3553(a)(2)(B); "protect the public from further crimes of the defendant", 18 U.S.C. §3553(a)(2)(C), and "provide the defendant with needed educational … training, medical care, or other correctional treatment in the most effective manner", 18 U.S.C. §3553(a)(2)(D). The Court must also consider the kinds of sentences available. 18 U.S.C. §3553(a)(3).

The sufficient-but-not-greater-than-necessary requirement, often referred to as the "parsimony provision", is not just another "factor" to be considered along with the others set forth in §3553(a), but sets an independent limit on the sentence a court may impose, to which all the enumerated factors are subservient.

Moreover, 18 U.S.C. §3661 mandates that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

> The [Sentencing] Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, *education*, *mental or emotional condition*, medical condition (including drug or alcohol addiction), *employment history*, lack of guidance as a youth, *family ties*, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines. See USSG. Manual §§ 5H1.1-6, 11, and 12 (Nov. 2006). These are, however, matters that §3553(a) authorizes the sentencing judge to consider. See, *e.g.,* 18 U.S.C. §3553(a)(1)).
> <u>Rita v. U.S.</u>*,* 551 U.S. 338, 127 S.Ct. 2456, 2473 (2007) (Stevens, J. and Ginsburg, J., concurring). [emphasis added].

4

"[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a *rough approximation* of sentences that *might* achieve §3553(a)'s objectives." *Id.*, 127 S.Ct., at 2465 (majority opinion) [emphasis added]. Thus, the Court may take into consideration that the guideline sentence should not apply "because the Guidelines sentence itself fails properly to reflect §3553(a) considerations..." *Id.*, 127 S.Ct., at 2465. The Supreme Court's decisions mean that "the standards governing departures do not bind a district court when employing its discretion with respect to variances." *United States v. Chase*, 560 F.3d 828 (8th Cir. 2009) (case remanded to consider defendant's characteristics which could warrant a downward variance under §3553(a)).

The Court is required to "consider every convicted person as an individual and every case a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 528 U.S. 81, 113 (1996). The sentence must be reasonable based on the Court's assessment of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Kristl,* 437 F.3d 1050, 1053 (10th Cir. 2006). To impose a reasonable sentence, the Court must consider the factors set forth in 18 U.S.C. §3553(a) and select a sentence that is "sufficient, but not greater than necessary" to fulfill the sentencing goals established by Congress. *United States v. Mateo,* 471 F.3d 1162, 1163 (10th Cir. 2006).

Pursuant to 18 U.S.C. §3553(a), the Court may in its discretion vary from a recommended guideline range sentence without finding any of the USSG factors for a downward departure are present. *Smart,* 518 F.3d, at 808; see also, *United States v. Ranum,* 353 F.Supp.2d 984, 989 (E.D. Wis. 2005).

### D.  DEFENDANT'S HISTORY & CHARACTERISTICS

While it is acknowledged that Mr. Wilson's criminal history is troubling, that conduct

5

occurred nearly 20 years ago. It is apparent that, starting with his last term of imprisonment, Mr. Wilson seized the opportunity to change and rehabilitate himself. He applied himself to resuming the education that had been interrupted by, firstly, his teenage disinterest in school, and then the criminal activities that resulted in the two terms of imprisonment. This led to him obtaining his General Equivalency Degree while he was serving his sentence. He also started to explore further education, initially while serving his sentence, and then, following his release from prison, by registering for classes at Central New Mexico Community College ("CNM"). He continued to pursue his studies at CNM up to his arrest on June 24, 2016.

In addition his attempts to improve himself educationally, Mr. Wilson has demonstrated since his release from prison his enthusiasm for hard work. Since 2008, with only brief interruptions, Mr. Wilson had been employed as a cashier at the Economy Gas and Moon Mart Gas Station, on Menaul Blvd. NE in Albuquerque, New Mexico. He was working there at the time of his arrest. He disclosed his criminal past to his employer, who was nonetheless prepared to entrust Mr. Wilson with the job of cashier, and therefore his employer's money. His employer describes him as "a hard working and honest person who performs his daily duties diligently" and that he is "an asset for the organization …." *See* Exhibit 2, Letter from Sankhar Monger, President of S and S Everest LLC d/b/a Economy Gas and Moon Mart, attached hereto and incorporated herein by reference.

Mr. Wilson also started a second job, also as a cashier, at Dollar Tree at Coors and Ladera in Albuquerque, New Mexico, in about October 2015, where he was also employed until his arrest.

Mr. Wilson was even exploring the possibility of opening his own small business at the time of his arrest.

While he was serving his last sentence of imprisonment, Mr. Wilson also became a convert

to Islam. This conversion has guided and informed his behavior, and has reinforced his determination to lead a good and honorable life, according to its tenets and its moral code.

Undoubtedly, the most important thing in Mr. Wilson's life is his family, both nuclear and extended. He knows his behavior in his teens and early 20's was a profound disappointment to his father, a retired veteran of the United States Air Force, as well as his mother. Since his release from prison, he has maintained contact with his father, who has already undergone a liver transplant, and is currently on dialysis while awaiting a kidney transplant. Although he was in less contact with his mother following his parents' divorce in 1994, they continued to be in contact with each other until his arrest. He has also kept in contact with his sister and brother, and, to a lesser extent, his half-brother.

Most central to Mr. Wilson's life is his care and concern for his two children, 4 year old Khadijah and 1 year old Amir, and his ex-wife Ashley. Although their marriage ended in divorce in 2014, Mr. Wilson and Ashley have since reunited and he was doing everything in his power to support the family to the best of his ability up to the time of his arrest in June 2016.

His separation from his immediate family causes him profound distress, anxiety and depression and he has had problems sleeping since he was arrested and placed in custody. He has been reluctant to use medication, perhaps as a result of his faith, relying on meditation instead to give him some relief. He is anxious to return to his family as soon as possible, so as to be able to provide them the support that he considers to be his responsibility.

### E.  CONCLUSION

For the reasons set forth herein, Defendant Herman Leyvoune Wilson, Jr. respectfully submits that even the low end of the guideline range sentence is greater than necessary to satisfy the purposes of sentencing in 18  U.S.C. §3553(a).

Given the real efforts he has made to effect a change in his behavior both during his last incarceration and in the years since his release, and given his obviously genuine remorse for his foolish behavior, Mr. Wilson would respectfully request that the Court consider some variance from the guideline range sentence. This would not only satisfy all the purposes of sentencing in 18 U.S.C. §3553(a), but also would return him to his family as soon as possible so that he can resume the undoubted progress that he had been making before his arrest.

        Respectfully Submitted,

        */s/ Charles Fisher*
        Charles Fisher
        105 Bryn Mawr Dr. SE
        Albuquerque, New Mexico 87106
        Tel. (505) 247 4099
        Fax. (505) 268 1162
        e-mail: cfisher@3lionslawyer.com

        *Attorney for Defendant Herman Leyvoune Wilson, Jr.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on January 19, 2017, the foregoing pleading was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused all parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*/S/ Charles Fisher*
Charles Fisher